IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Alvan Motor Freight, Inc., | Case No. 4:05 CV 125 |
| Plaintiff, | (Related Case No. 1:06 CV 809) |
| -vs- | MEMORANDUM OPINION AND ORDER |
| Trustees of the Central States, Southeast and Southwest Areas Pension Fund, *et al.*, | JUDGE JACK ZOUHARY |
| Defendants. | |

### INTRODUCTION

Plaintiff Alvan Motor Freight asks this Court to review a labor committee award that ultimately forces Alvan to make, simultaneously, health and welfare contributions to two different funds, Central States Pension Fund ("CS Pension Fund"), and Michigan Conference of Teamsters Welfare Fund ("Michigan Fund"). Alvan moves this Court to vacate the award of the Central Region Joint Area Committee ("Grievance Panel"). All parties agree the reallocation at issue was intended merely to shift money from one fund to another; it was not intended, and the Grievance Panel further did not intend, to require Alvan to pay the contributions twice. For the reasons that follow, and despite the high level of deference this Court has for employer-labor grievance committee awards, the current award is unenforceable.

A hearing was held on July 23, 2007 on the cross Motions for Summary Judgment (Doc. Nos. 53-55, 56-57, 60-61). Parties agreed to submit the case on the briefing without the need for trial (Doc. No. 123) and, in this regard, filed a Stipulation of agreed exhibits and facts (Doc. No. 128) as well as supplemental memoranda (Doc. Nos. 124-27).

**BACKGROUND**

The National Master Freight Agreement ("NMFA") was ratified April 1, 2003, and is effective through March 31, 2008 (Exhibit A). Alvan is a signatory of the NMFA. Alvan's collective bargaining agreement ("CBA") is composed of the NMFA, along with an Addendum, known as the Alvan Addendum (Exhibit B). The Alvan Addendum creates health and welfare contributions for the Michigan Fund, separate from the contributions in the NMFA. These contribution levels are also present in Alvan's Participation Agreements ("PAs") with the Michigan Fund. The contribution rates to the Michigan Fund in the Addendum are lower than the NMFA rates, which Alvan pays to the Central States Health Fund ("CS Health Fund").

In August 2004, a Joint National Master Committee Memorandum (Exhibit H) required the 2004 and 2005 contribution increases, due under the 2003-2008 NMFA, be diverted from the CS Health Fund to the CS Pension Fund. Alvan, in compliance, diverted its health and welfare contribution increases for its employees residing in Ohio who participated in the CS Health Fund. Alvan however continued to pay the contribution increases to the Michigan Fund for its Michigan employees pursuant to the PAs and the Alvan Addendum.

On January 11, 2005, an "Amended Reallocation Agreement" (Exhibit I) was filed by the Joint National Master Committee to expand the scope of the August 2004 Memorandum. The Amended Agreement required Alvan reallocate the contribution increases from the Michigan Fund to the CS Pension Fund and was accompanied by an "Amended Supplemental Memorandum of Understanding Regarding the MCTWF Reallocation Agreement" (Exhibit J). These January documents however specifically required the consent of the Michigan Fund or an escrow for the reallocation to be effective. Neither consent nor an escrow were established, nor did Alvan reallocate.

CS Pension Fund filed a grievance against Alvan in July 2005 (Exhibit L) and was heard before the Grievance Panel in September 2005 (Exhibit N). In August 2005, CS Pension Fund wrote Alvan, demanding Alvan cease paying the contribution increases to the Michigan Fund and reallocate them all to CS Pension Fund, in spite of Alvan's contractual obligations to the Michigan Fund. Alvan refused.

The Michigan Fund refused to participate in the arbitration, stating the Panel had no jurisdiction over it because the Michigan Fund is not a member of the NMFA. The Panel upheld CS Pension Fund's grievance and required Alvan to pay CS Pension Fund the 2004 and 2005 Health and Welfare contributions it had previously paid to the Michigan Fund. Alvan appealed this ruling to federal court.

The key document at issue is the Amended Reallocation Agreement which is the basis for the grievance filed by the CS Pension Fund. Under the Amended Agreement, if the Michigan Fund refused to agree to the reallocation, then Alvan had no obligation to make contributions to the Michigan Fund, or the CS Pension Fund until the issue had been resolved before a court or tribunal with jurisdiction. The Agreement also stated that the sole issue for any court or tribunal would be whether the Amended Reallocation Agreement is valid and binding on the Michigan Fund. Until that decision, the contested money was to be put in a "specially-designated escrow account."

### **REVIEW OF ARBITRATION AWARD:** *MICHIGAN FAMILY RESOURCES*

Judicial review of an employer-union grievance committee is the same as that of an arbitrator -- they are both given deference. *Bixby Med. Center v. Mich. Nurses Assoc.*, 142 Fed.Appx. 843, 845 (6th Cir. 2005). Earlier this year, the Sixth Circuit established a new standard for reviewing arbitration decisions. In *Michigan Family Resources, Inc. v. Service Employees International Union*

*Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007), the Circuit followed the earlier precedent of Supreme Court cases such as *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 (1987) and *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001), and overruled *Cement Divisions, National Gypsum v. United Steelworkers Local 135*, 793 F.2d 759 (6th Cir. 1986), limiting review to questions of "procedural aberration." More specifically, this Court is to question whether the Grievance Panel acted outside of its authority in resolving a dispute which was not committed to it, whether the Grievance Panel committed fraud, had a conflict of interest, or otherwise acted dishonestly, and finally whether the Grievance Panel was "arguably construing or applying the contract." *Id.* at 753. If the Grievance Panel acted in accordance with these lenient requirements, then the award will be upheld, regardless of whether "serious, improvident, or silly errors" were made. *Id.*

### A. Grievance Panel Had No Authority Over The Michigan Fund

The Grievance Panel acted within its authority to resolve the dispute in the sense that the grievance was submitted to the Panel for review. This does not mean, however, that the Panel had authority over all relevant parties. Although the dispute clearly involved the Michigan Fund, the Grievance Panel had no authority over the Michigan Fund.

The Michigan Fund is not a member of NMFA, and thus NMFA Article 31, mandating the grievance process, does not apply to the Michigan Fund. The Michigan Fund did not consent to the grievance proceeding, nor did it delegate authority to the Grievance Panel. Reliance by counsel on Article 31 at the hearing is therefore misplaced. Further, the Michigan Fund did not agree to modify the CBA, nor the Participation Agreements with Alvan. The January 2005 amendments applied only to Central States. Any amendment made to Alvan's CBA, by changing Alvan's contribution

obligations, is not binding on the Michigan Fund because the Panel does not have jurisdiction over the Michigan Fund.

This dispute relates solely to employees who participate in the Michigan Fund, and the impact of the January 11, 2005 Amended Reallocation Agreement which required the consent of the Michigan Fund to the reallocation. The Michigan Fund did not consent to the reallocation, nor to review by the Grievance Panel. In the Sixth Circuit, an arbitrator (here the Grievance Panel) cannot force a party to arbitrate any dispute that it has not, by contract, obligated itself to arbitrate. *United Steelworkers v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994). As the Michigan Fund is not bound by the NMFA and refused to be involved in the proceedings, the Grievance Panel did not have jurisdiction to decide a dispute concerning the Michigan Fund, and thus acted outside its authority under *Michigan Family Resources*.

This conclusion is reinforced by the more recent holding in *Peterbilt Motors v. UAW Int'l Union*, 2007 LEXIS 5594 (6th Cir. 2007) where the court was also asked to vacate an arbitrator's award of union benefits. Acknowledging that review is "very limited," the court found nonetheless that because Prudential was not subject to the arbitration provision of the CBA, the grievance was not arbitrable. The court noted "the arbitrator is [not] free to invent contract provisions that will support a finding of arbitrability" and there was no support for Prudential being "covered" by an arbitration clause. Likewise, here, there is no support for the Michigan Fund agreeing to arbitration before the Grievance Panel. On the contrary, there was specific evidence read into the record (Exhibit M) to the contrary which the Panel wholly failed to address.

**B. Grievance Panel Bias, Although Suspect, Is Not Proven**

Alvan has the burden of proof to show bias, and the mere fact that the panel members have ties to one of the parties does not make them per se partial. *Nationwide Mutual Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 647 (6th Cir. 2005). Alvan must show that "a reasonable person would have to conclude that an arbitrator was partial." *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989). Although the Grievance Panel members all belong to Central States, this alone is not sufficient to establish bias.[1]

**C. Panel Decision Was "Untethered" To The Amended Reallocation Agreement**

Under *Michigan Family Resources*, this Court will find the Grievance Panel "arguably constru[ed] the contract" so long as the Panel "appeared to be engaged in interpretation" of the contract. *Michigan Family Resources, supra*, at 753.

At issue before the Grievance Panel was the Amended Reallocation Agreement, yet the Panel openly considered only the NMFA. While the Amended Agreement was submitted to the Panel as Exhibit 10, "The Joint National Committee decision establishing that reallocation is effective January 1, 2005, with respect to the Michigan Conference of Teamsters Welfare Fund," there is no showing that the Panel considered this document.

The Panel was not "arguably" involved in interpreting the Amended Agreement. Rather, the only contract construed was the main NMFA. While a written record is not necessary for evaluating an arbitration decision, an oral record is more easily found to be lacking. The Sixth Circuit in *Michigan Family Resources* pointedly remarked that the arbitrator issued a ten page opinion. The Sixth Circuit further explained the "hallmarks of interpretation" exist, such that an arbitration award could be upheld, when an arbitrator "refers to, quotes from and analyzes the pertinent provisions of

---

[1] The Panel composition, when considered in conjunction with the jurisdictional issue over the Michigan Fund, and the brevity of the Panel's decision, creates an appearance of bias.

6

the agreement." *Id.* at 754. None of these hallmarks are present in the decision by the Grievance Panel. The transcript of the oral proceedings before the Grievance Panel is brief, and the main questions asked by a Grievance Panel member pertain to Alvan's membership in the NMFA. The decision, also oral, is one sentence: "Motion made per the National Grievance decision that the claim of Central States is upheld." Again, *Peterbilt* is instructive. The arbitrator there, like the Panel here, made no showing that he was "construing a contract" and the decision was "so untethered to the terms of the agreement" that doubt surrounds whether the decision was preceded by contract interpretation. *Id.* at 4. This is especially true here where the panel deliberated for only a few minutes and issued a one sentence conclusory opinion. The Grievance Panel showed no signs of being engaged in interpreting the appropriate documents. Therefore, the Panel's decision will be vacated.

## CONCLUSION

The Grievance Panel's decision did not live up to the lenient standard set by the Sixth Circuit. The Panel acted outside its authority to resolve a dispute with the Michigan Fund, a party not within its jurisdiction and not joined. The Panel further did not address or give an opinion on the Amended Agreement such that this Court could be confident that it construed or considered the appropriate documents. Therefore, the decision is unenforceable; Alvan will not be required to pay the compensation increases for 2004-2005 to CS Pension Fund.

For the foregoing reasons, judgment on the merits for Plaintiff shall be granted.

It is accordingly ORDERED THAT the decision of the Central Region Joint Area Committee be, and hereby is, vacated.

IT IS SO ORDERED.

                                                                       s/ *Jack Zouhary*
                                                                    JACK ZOUHARY
                                                                    U. S. DISTRICT JUDGE

                                                                    July 31, 2007