IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Alvan Motor Freight, Inc., | Consolidated Case Nos. |
| | 4:05 CV 125 |
| Plaintiff, | 1:06 CV 809 |
| -vs- | MEMORANDUM OPINION |
| | AND ORDER |
| Trustees of the Central States, | |
| Southeast and Southwest Areas | JUDGE JACK ZOUHARY |
| Pension Fund, et al., | |
| Defendants. | |
| Central States Southeast and Southwest Areas Pension Fund, et al. | |
| Plaintiffs, | |
| -vs- | |
| Alvan Motor Freight, Inc., | |
| Defendant. | |

**INTRODUCTION**

This case involves a labor pension fund contribution dispute that eventually resulted in dueling litigation in the federal courts. The crux of the dispute focuses on whether Alvan Motor Freight (Alvan) made all the requisite contributions to the Central States Southeast and Southwest Area Pension Fund (Central States Pension Fund). The Central States Pension Fund and its Trustees believed a 2005 reallocation agreement required Alvan to shift contributions from the Michigan

Conference of Teamsters Welfare Fund (Michigan Fund) to the Central States Pension Fund. Alvan disagreed, leading to a grievance hearing where the grievance panel found for Central States, which then moved to enforce the decision in federal court in Illionois. Alvan, in contrast, moved to challenge the decision in federal court in Michigan. This Court consolidated the cases,[1] vacated the grievance panel decision and granted Alvan judgment on the merits (Doc. No. 149).

Alvan now moves for attorney fees pursuant to both 29 U.S.C. §1132(g)(1) and Article VIII of the National Master Freight Agreement (NMFA) between Alvan and Local 364 of the International Brotherhood of Teamsters (Teamsters Union) (Doc. No. 141). The matter is fully briefed and a hearing was held on March 20, 2008.[2]

### BACKGROUND

NMFA was ratified on April 1, 2003 and effective until March 31, 2008. Along with an Addendum, the NMFA serves as Alvan's collective bargaining agreement (CBA) requiring Alvan to contribute health and welfare funds to the Central States Health Fund. For employees in Michigan, however, the Addendum requires contribution of health and welfare monies to the Michigan Fund. Contribution levels for the Michigan Fund are also memorialized in Alvan's Participation Agreements (PAs).

---

[1] Central States filed suit in Illinois on September 16, 2005 and served Alvan with the Complaint on November 15, 2005. Between those two dates, on November 9, 2005, Alvan filed suit (Case No. 05-125) in Michigan. The Illinois suit was then transferred to Michigan (Case No. 06-809).

[2] Alvan filed this Motion against both the Central States Pension Fund and the Michigan Fund. However, Alvan later withdrew, without explanation, its Motion against the Michigan Fund. At the hearing, when questioned, counsel for Alvan indicated the withdrawal was not "voluntary" and came after a "threat" of a strike from the Teamsters. Alvan had no legal authority for its selective approach. Central States argues its ability to seek contribution from the Teamsters for any award is jeopardized (Tr. pp. 20-21, 32-34). The Court need not reach these issues given its ruling.

In August 2004, a Joint Master Committee Memorandum (August Memorandum) required Alvan to divert its 2004 and 2005 NMFA contribution increases from the Central States Health Fund to the Central States Pension Fund. Alvan complied, diverting increases for its Ohio employees who participated in the Central States Health Fund. Alvan did not, however, do so for its Michigan employees and, relying on the PAs and the Addendum, continued to make those payments to the Michigan Fund.

In January 2005, the August Memorandum was amended to direct Alvan to reallocate the contribution increases from the Michigan Fund to the Central States Pension Fund. The amendment also required the consent of the Michigan Fund (or an escrow) for the reallocation to be effective. Because the Michigan Fund did not consent (or establish an escrow), Alvan did not reallocate the funds.

As a result, Central States filed a grievance against Alvan in July 2005. Per the NMFA, the Central Region Joint Area Committee (Committee) held a hearing on the grievance in September. The Michigan Fund, however, refused to participate, pointing out that because it was not a signatory to the NMFA, the Committee had no jurisdiction over its activities. The Committee eventually upheld the grievance and required Alvan to pay Central States the 2004 and 2005 health and welfare contributions it had previously paid to the Michigan Fund.

When Alvan did not follow the Committee's decision, the Central States Trustees filed suit in the Northern District of Illinois. At approximately the same time, Alvan challenged the Committee's ruling in the Western District of Michigan. This Court consolidated the cases and ruled in favor of Alvan (Doc. Nos. 133, 149). Alvan now requests attorney fees pursuant to Article VIII

3

of the NMFA and ERISA § 502(g)(1) (29 U.S.C. §1132(g)(1)). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

## I. ERISA

### A.    Applicability of 29 U.S.C. § 1132(g)(1)

It is well established "[u]nder the 'American rule,' in the absence of statute or enforceable contract, each party to the litigation bears its own legal fees." *Sec'y of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). Alvan moves for attorney fees under 29 U.S.C. § 1132(g)(1) which grants the court discretion to award such fees to "either party" in "any action under this subchapter . . . by a participant, beneficiary, or fiduciary." *See also King*, 775 F.2d at 669 ("Title 29 U.S.C. § 1132(g) confers broad discretion on a district court in making the award of attorney's fees").

Central States counters that the ERISA fee shifting statute does not apply to Alvan because: (1) Alvan, as an employer, is not a "participant, beneficiary, or fiduciary" and (2) with regard to the Michigan litigation, Alvan brought the case under 29 U.S.C. § 185 (suits by and against labor organizations) rather than ERISA. Alvan did, however, bring a common law ERISA counterclaim in the Illinois litigation.

Sixth Circuit holdings support Central States' claim that Alvan did not -- and could not -- bring a statutory claim under ERISA. In *Whitworth Brothers Storage Co. v. Central States, Southeast and Southwest Area Pension Fund*, 794 F.2d 221, 228 (6th Cir. 1986) the court held "that Congress intended to limit the parties who could maintain actions pursuant to section 502, that section 502 is an exclusive grant of jurisdiction, and that ERISA does not expressly provide for an action by an employer against a fund for a refund of contributions." Nevertheless, *Whitworth* did create federal

4

common law allowing employers to make ERISA-based contract claims for restitution. *Id.* at 234-36 n. 23 (recognizing a federal contract law claim because "courts are authorized to create federal common law governing an employer's right of restitution when the provisions of ERISA preempt the state law of restitution").

The Sixth Circuit has not decided whether suits based on ERISA common law claims are eligible for attorney fees. However, because "an employer is neither a 'participant,' 29 U.S.C. § 1002(7), 'beneficiary,' 29 U.S.C. § 1002(8), or 'fiduciary,' U.S.C. §1002(21) . . . ERISA does not appear to allow an employer to recover attorney's fees and costs in connection with a refund action." *B + B Elec. Co., Inc. v. Elec. Workers Local Union No 369 Ret. Fund*, 249 F. Supp. 2d 865, 870 (W.D. Ky. 2003) (citing *Whitworth*, 794 F.2d at 224). This Court finds no reason to deviate from the American rule, "as ERISA contains no authorization for an award of costs or attorney fees for an employer successful in obtaining a refund and the Sixth Circuit has not held to the contrary." *Id.*; *see also Airco Indus. Gases, Inc v. Teamster Health and Welfare Pension Fund of Phila. and Vicinity*, 850 F.2d 1028, 1037-38 (3d Cir. 1988) (refusing to apply Section 1451's fee shifting provision to the employer plaintiff's federal common law action for recovery of overpayments).

Alvan's defense in the Illinois litigation presents a different situation. There is no dispute that Central States brought an ERISA action against Alvan. Therefore, in contrast to the attorney fees associated with its non-statutory ERISA claims, Alvan could be eligible to collect attorney fees for its **defense** of Central States' statutory ERISA claims. *See, e.g.*, *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 229 (9th Cir. 1994) ("Where one of the above enumerated parties -- participant, beneficiary, or fiduciary -- brings an action, the district court has discretion to award attorney's fees to either plaintiffs **or defendants**." (emphasis added)); *Cowden v. Montgomery County Soc. for*

*Cancer Control*, 653 F. Supp. 1072 (S.D. Ohio 1986) (providing attorney fees under 29 U.S.C. § 1132(g) to employer who defended against employee's meritless ERISA claim); *see also Sullivan v. Randolph*, 504 F.3d 665, 670-72 (7th Cir. 2007) (providing attorney fees for an employer because the trustee plaintiff's ERISA suit "was not substantially justified"); *Trustees for Mich. Carpenters' Council Health and Welfare Fund v. Sobie Co.*, 1989 WL 109759, at *5 (6th Cir. Sept. 25, 1989) (unpublished opinion) (stating in dicta the district court's unopposed grant of attorney fees to employer was not an abuse of discretion).

Nevertheless, the Trustees argue Alvan still cannot collect attorney fees because it waived its rights to the fees by failing to specifically request them in its Answer. *See, e.g.*, *In re Am. Cas. Co.*, 851 F.2d 794, 802 (6th Cir. 1988). The only place Alvan requested fees was in Counterclaim Four, which Central States argues, per *Whitworth*, "arises under federal common law, not ERISA" (Doc. No. 152 at 8). Furthermore, Alvan's request failed to cite 29 U.S.C. § 1132(g) or ERISA § 502. *Cf. R & D Village Square, LLC v. Murk's Village Market, Inc.*, 2007 WL 3473703, at *5 (W.D. Mich. Nov. 13, 2007) (explaining a complaint met the requirements of Rule 9(g) because the plaintiff specifically quoted the portion of the lease in question giving rise to attorney fees and requested such fees pursuant to the lease).

In the Sixth Circuit, claims for attorney fees are "in the nature of special damages and so should be specifically pleaded if they are to be claimed." *In re Am. Cas. Co.*, 851 F.2d at 802. *But see Lund v. Citizens Fin. Group, Inc.*, 1999 WL 814341, at *16 (D.N.H. Sept. 30, 1999) (explaining precedents in other circuits holding Federal Civil Rule 54(c) allows recovery of attorney fees even if the parties did not plead any claims for such fees). Rule 9(g)'s requirement "that special damages be specifically stated . . . maintains the traditional pleading distinction between general damages,

which can be alleged without particularity under Rule 8(a), and special damages, which require the pleading of considerable detail." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1310 (2007).

What constitutes specific pleadings is somewhat unclear. According to Wright and Miller, "[m]ost courts now take the position that allegations of special damage will be deemed sufficient for the purpose of Rule 9(g) if they are definite enough to enable the opposing party to prepare his or her responsive pleading and a defense to the claim." Yet "some federal courts still require the elements of special damages to be alleged in sufficient detail to inform the district court of the substance of the claim." *Id.* at § 1311. The Sixth Circuit appears to fall in the latter category. *See R & D Village Square, LLC*, 2007 WL 3473703, at *5.

However, even if Alvan did not waive its rights to fees in the Illinois litigation, this Court finds Alvan is not entitled to attorney fees under 29 U.S.C. § 1132. This is because even if eligible under § 1132, Alvan must still satisfy five factors to be awarded attorney fees. An examination of these factors reveals Alvan falls short. *See King*, 775 F.2d at 669.

### B.   Application of the *King* Factors

In assessing whether to grant a prevailing party fees under Section 1132, courts in this Circuit look at:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

King, 775 F.2d at 669. No single factor is determinative and "the court must consider each factor before exercising its discretion." *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998).

Almost all these factors favor the position of Central States. Regarding the third factor, Central States points out the deterrent effect of such an award would be minimal given the fiduciary obligations to both clarify and enforce contributions. The Trustees also have no incentive to engage in vexatious suits because the outcome of such litigation will not provide them with any personal gain. Even Alvan admits the unusual circumstances of this litigation make any deterrent effect in "similar circumstances" unlikely.

Alvan also concedes the fourth factor. Receipt of fees would not "confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA," because, as counsel explained, "not all of [the elements] always apply to each situation" (Tr. 17). The inapplicability of factor four, therefore, favors a finding that a fee award would be inappropriate. *See Moon v. Unum Provident Corp.*, 461 F.3d 639, 645 (6th Cir. 2006) (holding the district court was correct in finding the fourth factor was not in plaintiff's favor when plaintiff did not seek to confer a common benefit on all plan participants and there was "no evidence in the record" the plaintiff instituted the litigation to resolve a significant legal issue).

In contrast, Alvan asserts factors one, two, and five favor its position. While Alvan obviously defeated Central States on the merits, Alvan's argument that the underlying claims presented a "novel issue" (Doc. No. 142 at 17) indirectly supports -- at least *ex ante* -- that the positions of the parties "did not significantly outweigh" each other. *Schwartz*, 160 F.3d at 1121 (noting the losing party raised issues that were "novel and complicated").

With regard to Central States' ability to pay -- the second factor -- the availability of the money favors granting fees. *See, e.g.*, *Soltysiak v. Unum Provident Corp.*, 480 F. Supp. 2d 970, 975 (W.D. Mich. 2007) (defendant plan's ability to satisfy attorney fee award not in dispute). However,

the maintenance of the Central States Pension Fund without burdening employee participants -- especially given the import of the Fund's obligations -- is a compelling countervailing factor.[3]

Alvan also argues Central States acted in bad faith by: (1) seeking resolution through a biased and unnecessary grievance process; (2) failing to raise certain facts during the process; and (3) allowing its legal counsel to be present during the process. Even assuming, *arguendo*, the Court can consider actions at the grievance stage, and that such actions amount to "bad faith" as defined under *King* factor one, for the reasons set forth below these alleged actions do not overcome Alvan's failure to satisfy the remaining *King* factors. *Cf. Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 455 (6th Cir. 2000) ("[Section] 1132(g)(1) should not be interpreted to permit fee awards for legal expenses incurred in the course of exhausting administrative remedies."); *Schwartz*, 160 F.3d at 1120 (reviewing "whether the appellant pursued this appeal in bad faith and not whether the appellant's conduct which resulted in litigation warrants a finding of bad faith or culpability"); *Moon*, 461 F.3d at 643-44 (finding bad faith where defendant engaged in "culpable conduct" that was "arbitrary and capricious"); *Gard v. Blankenburg*, 33 F. App'x 722, 732 (6th Cir. 2002) ("[T]he necessary degree of culpability is not established by the fact that a defendant has been found liable.").

Regardless of Alvan's **actual** contributions to the Central States Fund, the Trustees could not be sure the Fund would not be accountable to beneficiaries for contributions Alvan **should** have made. Rather than pursuing litigation in the future, it made sense for Central States to seek immediate clarification of its obligations. Furthermore, under the NMFA -- to which Alvan is a signatory -- the Trustees had a clear right to submit questions to the Committee (Ex. A at 237 -- "Disputes of

---

[3] This would be a particularly appropriate factor to consider, if necessary, with regard to a reduction in the **amount** of an award. *See Seitzman v. Sun Life Assurance Co. of Can., Inc.*, 311 F.3d 477, 487-88 (2d Cir. 2002) (despite the losing party's ability to "pay the fees in full," his status as a retired doctor and his health problems justified "an exercise of discretion to reduce the fee award").

questions of interpretation concerning the requirement to make contributions on behalf of particular employees or classifications of employees shall be submitted directly to the Regional Joint Area Committee by either the Employer, the Local Union, or the trustees.").

In the course of that process, Alvan had an opportunity to present facts and evidence; arguments that the Trustees failed to present certain facts that favored Alvan, therefore, are not persuasive. Nor is the Court convinced that legal counsel's presence at the hearing violated the NMFA, let alone violated it to an extent rising to the level of bad faith.[4]

### II. Right to Attorney Fees Under the NMFA

Alvan also asserts a right to attorney fees under Article VIII, § 2(b)(5) of the NMFA which states: "If the Employer or Union challenges in court a decision issued by any dispute resolution panel provided for under this Agreement, the costs of the challenge, including court costs and attorney fees, shall be paid by the losing party." (Doc. 142 at 10 (quoting the NMFA at 37)). Though Central States was not a signatory to the NMFA, Alvan asserts that because the Trustees have taken the position that Central States "is an intended third party beneficiary of the NMFA under these facts" the Fund is bound by the agreement. *Id.*

The Trustees deny their action binds them to all the provisions of the NMFA, a position case law in other circuits supports. *See Sinai Hospital of Baltimore, Inc. v. Nat'l Benefit Fund*, 697 F.2d 562, 568 (4th Cir. 1982) (third party trustees are not bound by the terms of the bargaining agreement just because they may enforce collection of contributions); *see also Santa Monica Culinary Workers Fund v. Mirmar Hotel Co.*, 920 F.2d 1491, 1493 (9th Cir. 1991) (explaining "the role of the trustees

---

[4] According to Article VIII § 2(b)(3) of the NMFA: "No lawyers will be permitted to present cases at any step of the grievance procedure." (Ex. A at 37). Trustees counter that legal counsel did not "present" any arguments but rather were silent.

10

is generally defined by the trust documents, to the extent these documents are consistent with the provisions of ERISA").

The Trustees also point out that while the NMFA empowers them to submit disputes to the Regional Joint Committee, Article VIII conspicuously does **not** include "Trustees" among the parties whose court challenges may result in payment of costs to the prevailing litigant. Citing contract cases and theories of interpretation, the Trustees therefore conclude "the fee shifting provision of the NMFA . . . limits liability for fees to 'the Employer or Union'" (Doc. No. 152 at 2). Furthermore, even if Article VIII could apply to a suit brought by the Trustees, it would not apply to the enforcement action in Illinois because that action did not "challenge[] . . . a decision issued by any dispute resolution panel." It was, instead, an effort to enforce such a decision.

This analysis precludes an application of Article VIII, § 2(b)(5) to the Illinois action, but fails to acknowledge an employer did bring the Michigan half of this litigation -- namely Alvan's effort to "challenge[] in court" the decision issued by the Committee (Ex. A at 37).[5] The entirety of Subsection (b), however, applies to "grievances deadlocked at the National Grievance Committee" (Ex. A at 36). This dispute was never so procedurally hindered, eliminating the application of (b)(5) of the NMFA to both actions.

The Court also notes that holding the Fund liable for Alvan's attorney fees could conflict with the Central States Trust Agreement and, more importantly, ERISA. According to 29 U.S.C. § 1103(c)(1) "the assets of a plan shall never unite to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and

---

[5] As long as an "Employer or Union" is the party challenging the decision in a court, the defendant is irrelevant. This interpretation is the reverse of the ERISA fee shifting statute (29 U.S.C. § 1132(g)(1)), which only applies in ERISA cases which, in turn, **cannot** be brought by employers. As such, it arguably fills a gap in ERISA because current interpretations of the statute do not allow for fee shifting when an employer brings a common law ERISA claim.

11

defraying reasonable expenses of administering the plan." The statute provides for only three exceptions to this rule: contributions paid by mistake of law or fact, withdrawal liability overpayments, and plan terminations. *Id.* at §1103(c)-(d).

Other statutes -- and the NMFA itself -- incorporate this "anti-inurement rule." The Internal Revenue Code provides a pension plan with tax qualified status only if it is impossible for the employer to divert the plan's corpus or income for "purposes other than for the exclusive benefit of his employees or their beneficiaries."[6] 26 U.S.C. § 401(a)(2). The Central States Trust Agreement, which is incorporated into the NMFA, also prohibits payments to employers with the same limited exceptions.

These efforts to protect trusts from being used for any purpose other than to benefit beneficiaries are not dispositive, but are persuasive to an application of the NMFA. *See Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Area Pension Fund*, 982 F.2d 1006, 1019 (6th Cir. 1993) (holding "the anti-inurement policy of ERISA bars an award of interest on any amount that is refunded"); *Airco*, 850 F.2d 1028, 1037. Even if Article VIII, § 2(b)(5) could apply to cases that were never "deadlocked at the National Grievance Committee," the NMFA should not be applied in a manner that contravenes the policy objectives of the anti-inurement rule or risks binding the Trustees in a manner the NMFA never intended.

---

[6] The relevant Internal Revenue regulation explains "the trust instrument must definitely and affirmatively make it impossible for the nonexempt diversion or use to occur, whether by operation or natural termination of the trust, by power of revocation or amendment, by the happening of a contingency, by collateral arrangement, or by any other means." 26 C.F.R. § 1.401-2(a)(2)

12

**CONCLUSION**

For the above reasons, Alvan's claim for attorney fees under ERISA and under Article VIII, § 2(b)(5) of the NMFA is denied.

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                              JACK ZOUHARY
                                              U. S. DISTRICT JUDGE

May 7, 2008